**UNITED STATES of America**

v.

**Mary T. GRACE, Appellant.**

**No. 85–5174.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1985.

Decided Dec. 6, 1985.

As Amended Dec. 6, 1985.

Sebastian K.D. Graber, Alexandria, Va., Court Appointed Counsel, for appellant.

Michael L. Martinez, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and C. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief for appellee. Michael W. Farrell and John D. Bates, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellee.

Before WRIGHT and SCALIA, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM.

This is an appeal from a criminal conviction. The facts are not in dispute. On October 15, 1984, appellant Grace was arrested, along with several other persons, on the White House sidewalk. Grace was charged with a violation of 36 C.F.R. § 50.19(e)(9) (1984),[1] namely, standing sta-

---

1. In 36 C.F.R. § 50.19(e)(9) (1984), the Department of Interior, National Park Service, has provided:

No signs or placards shall be permitted on the White House sidewalk except those made of cardboard, posterboard or cloth having di-

**820**

tionary in the "center zone" of the White House sidewalk while holding a cloth banner.

At trial in the District Court, Grace conceded that she had violated the regulation.[2] She raised, instead, several legal defenses to her conviction. Despite these objections, the District Court convicted her and sentenced her to time served plus a $25 assessment. On this appeal, Grace reiterates many of the objections made in the District Court. In addition, Grace challenges the assessment of $25. We affirm the conviction, but remand to the District Court to permit it to entertain a motion to vacate the $25 assessment.

We consider, in turn, each of the arguments raised by appellant on this appeal. Appellant suggests first that the "center zone" regulation, which bans holding a sign while standing stationary in the "center zone," based as it is solely on aesthetic concerns, violates the First Amendment. Appellant recognizes, however, that our decision in *White House Vigil for the ERA Committee v. Clark*, 746 F.2d 1518, 1538 (D.C.Cir.1984), determined that the regulation is constitutional in this regard. *See* Br. for Appellant at 22. The rule of *stare decisis* forbids our reconsidering this question.

■ Second, appellant argues that the District Court erred in refusing to consider evidence concerning the "cultural identity" of the White House sidewalk. Appellant bases this argument in a brief passage in the *White House Vigil* opinion: "the center zone restriction would be suspect were it shown that the public regards the presence of stationary signs directly in front of the White House as aesthetically pleasing." *White House Vigil*, 746 F.2d at 1536. This passage, however, was not an invitation to the introduction of new evidence on the "cultural identity" of the White House sidewalk in every subsequent case. It was, instead, one part of an explanation of why the National Park Service could reasonably conclude that a ban on stationary protests was aesthetically desirable. *See id.* at 1537.

Third, appellant Grace asserts that the "center zone" regulation is invalid as applied in this case. Grace notes, in particular, that soon after her conviction a reviewing stand for the Presidential Inauguration was erected on the sidewalk, which obstructed the view of the White House. She further observes that attached to the reviewing stand was a replica of the Presidential Seal, a sign in the same sense as the sign she carried when she was arrested. Appellant argues that these circumstances constitute a violation of the equal protection clause (as incorporated into the due process clause of the fifth amendment), similar to the circumstances held intolerable in *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) and *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). We consider separately her arguments on the reviewing stand and on the Seal.

■ That the National Park Service permitted the Inaugural Committee to construct a reviewing stand for the Presidential Inauguration on the White House sidewalk does not establish an equal pro-

---

mensions no greater than three feet in width, twenty feet in length, and one-quarter inch in thickness. No supports shall be permitted for signs or placards except those made of wood having cross-sectional dimensions no greater than three-quarter of an inch by three-quarter of an inch. Stationary signs or placards shall be no closer than three feet from the White House sidewalk fence. All signs and placards shall be attended at all times that they remain on the White House sidewalk. Signs or placards shall be considered to be attended only when they are in physical contact with a person. No signs or placards shall be tied, fastened, or otherwise attached to or leaned against the White House fence, lamp posts or other structures on the White House sidewalk. No signs or placards shall be held, placed or set down on the center portion of the White House sidewalk, comprising ten yards on either side of the center point on the sidewalk; Provided, however, that individuals may demonstrate while carrying signs on that portion of the sidewalk if they continue to move along the sidewalk.

2. Transcript of Hearing (Jan. 10, 1985) at 69, 72.

tection violation here. The Park Service regulations specifically permit certain conduct related to "national celebration events," including inaugural ceremonies. 36 C.F.R. § 50.19(d)(1)(vii) (1984). In addition, 36 U.S.C. § 724 (1982) specifically permits the construction of reviewing stands with the approval of the Inaugural Committee and the Secretary of the Interior (the Park Service here). The permit granted by the Park Service clearly allows construction of the reviewing stand. *See* Appendix ("App.") at 34 (permit, referring to reviewing area and construction on White House sidewalk).

Even though a reviewing stand (which concededly obstructs the view of the White House) is permitted while stationary sign-holding is not, this regulatory scheme does not necessarily violate the equal protection clause. The construction of a reviewing stand is, in itself, not speech. Speech requires both some intent to convey meaning and some meaningful effect. *See Wooley v. Maynard*, 430 U.S. 705, 713 n. 10, 97 S.Ct. 1428, 1434 n. 10, 51 L.Ed.2d 752 (1977) (suggesting that purportedly symbolic act must be done with "intent to communicate" in order to constitute symbolic speech);

*United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled as 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *White House Vigil*, 746 F.2d at 1539 (referring to both elements). Neither intent nor effect is clearly present here. If the construction of the reviewing stand is not speech, then the fact that the "center zone" regulations permit the stand but forbid Grace's form of protest does not establish discrimination based on the content of speech.[3]

■ The attachment of the Seal to the reviewing stand presents a more difficult problem. Appellant argues that the Seal is a "sign" within the meaning of 36 C.F.R. § 50.19(d)(9) (1984), which forbids stationary signs in the "center zone" of the White House sidewalk.[4] Further, appellant suggests that the permit granted for the Inaugural did not specifically allow attachment of the Seal to the reviewing stand.[5] At oral argument, counsel for the government conceded that the Seal may be considered a "sign" within the meaning of the regulations.[6] The government nevertheless ar-

---

**3.** The ordinance held invalid in *Mosley*, 408 U.S. 92, 92 S.Ct. 2286, for example, described permissible and impermissible conduct on the basis of the subject matter of the message presented. *Id.* at 95, 92 S.Ct. at 2289. The ordinance permitted labor picketing in the area of a public school but forbade all other picketing in such an area. The Court held that "[s]elective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." *Id.* at 96, 92 S.Ct. at 2290.

By contrast, the regulatory scheme here does not discriminate on the basis of content. The regulations permit a reviewing stand for the Inaugural but forbid stationary signs. The regulations say nothing about the content of any message. As a consequence, the government need not establish some compelling interest in making the distinction between stand-building and sign-holding. *See Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949) ("It is not a requirement of equal protection that all evils of the same genus be eradicated or none at all."). The government could reasonably conclude that, by building the reviewing stand, the Inaugural Committee was adding to the interest in providing facilities for a national celebration event.

*See* Government's Combined Opposition to Defendant's Motions for: (1) Issuance of Subpoena Duces Tecum under Rule 17(c); and (2) [Leave] to Supplement Defendant's Evidence or, in the Alternative, for a New Trial Based on Newly Discovered Evidence at 3 n. *, App. at 29 n. * (Indicating that the purpose of the reviewing stand was to provide a place for the President, his family, and guests to watch the Inaugural Parade). In addition, the Inaugural is a relatively infrequent and short-lived event, which does less harm to the aesthetic interest in preventing obstructions to the public's view of the White House.

**4.** *See supra* note 1 (text of regulation).

**5.** The permit does not specifically mention the Seal. It states, in addition, that "[a]ll laws, rules, and regulations applicable to the area covered by this permit remain in effect." App. at 33.

**6.** The government thus appears to have abandoned its original position, that the Seal was not a "sign" because it was not being used to convey any particular message. *See* Br. for Appellee at 11.

gues that the Seal was permitted under its regulatory scheme. We conclude that the Seal was authorized.[7] The Seal may be considered a part of the reviewing stand, and thus it was authorized under 36 U.S.C. § 724 (1982). *See supra* p. 820. That the permit for the Inaugural festivities does not specifically mention the Seal also presents little obstacle. The application for the permit specifically contemplated certain unspecified "props" and "other items." App. at 36. In these circumstances, we cannot say that the placement of the Seal on the reviewing stand was disallowed by the regulations. To hold otherwise, moreover, might impose an impossible requirement of detailing every element in a proposed demonstration.

■ Assuming that the placement of the Seal was authorized, the problem again becomes one of equal protection. May the Inaugural Committee place its sign on the reviewing stand on the White House sidewalk when appellant is not permitted to hold her sign on the same sidewalk? The question is really whether the Park Service has forbidden appellant's conduct based on the content of her sign. *See Carey v. Brown,* 447 U.S. at 460–61, 100 S.Ct. at 2289–91; *Mosley,* 408 U.S. at 95, 92 S.Ct. at 2289. We cannot say that such discrimination has occurred. The purpose of the prohibition on stationary signs in the "center

zone" of the White House sidewalk is to prevent obstruction of the public view of the White House. In this case, however, to forbid the Inaugural Committee to place the Seal on the reviewing stand would not achieve that purpose. The reviewing stand was already present on the White House sidewalk. The obstruction of the public view would thus have occurred in any event. *See* App. at 39 (reproduction of photograph of reviewing stand and Seal). Thus, the Park Service could differentiate between appellant's sign and the Inaugural Committee's Seal based solely on conduct rather than content.[8]

■ Appellant's fourth major argument is that the National Park Service may not make regulations which result in criminal convictions based on speech-related activities. The thrust of this argument is that such regulation violates the principle of separation-of-powers. *See* Br. for Appellant at 50. We categorically reject this argument. It is not the Park Service but the Congress that has criminalized violations of the Park Service regulations. *See* 16 U.S.C. § 3 (1982). As a consequence, no unlawful delegation of powers has occurred. *See United States v. Grimaud,* 220 U.S. 506, 521, 31 S.Ct. 480, 484, 55 L.Ed. 563 (1911) ("[T]he authority to make

7. To conclude otherwise, *i.e.,* to hold that the regulations expressly forbid the placement of the Seal on the White House sidewalk, would change our analysis of the problem in this case. If both the Seal and appellant's sign are forbidden by the regulations, then the fact that appellant was prosecuted and the Inaugural Committee was not must be analyzed as a question of selective prosecution. "To prevail on a defense of selective prosecution, appellant has to prove both that [she] was singled out for prosecution among others similarly situated *and* that the decision to prosecute was improperly motivated." *United States v. Mangieri,* 694 F.2d 1270, 1273 (D.C.Cir.1982); *see Wayte v. United States,* — U.S. —, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Appellant could not sustain this heavy burden. It is apparent that both parties involved in the Inaugural festivities (the Inaugural Committee and the Park Service) assumed that the regulations permitted the placement of the Presidential Seal on the reviewing stand. Were we now to hold that the regulations do not

allow this activity, the novelty of such an interpretation would itself establish that no selective prosecution had occurred. A prosecuting attorney certainly has the discretion to prefer to charge and prosecute clear violations of law.

8. That the Seal was only a small part of the reviewing stand is a further indication that the Park Service was differentiating between the sign and the Seal on a basis other than content. We need not decide whether the same could be said if the Seal had been the dominant part of the reviewing stand.

We note, in addition, that there is no indication in this case of an explicit intent to discriminate on the basis of content. Unlike the regulation in *Mosley,* the regulations at issue here do not describe permissible and impermissible conduct on the basis of the message conveyed. Nor is there any other indication that such express discrimination has, in fact, occurred.

administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense."). That the regulations in question involve speech-related conduct, moreover, is irrelevant to the delegation question.

■ Finally, appellant argues that the District Court erred in imposing a "victim assessment" of $25, pursuant to 18 U.S.C. § 3013 (Supp. II 1984). Appellant argues, *inter alia,* that this provision violates the equal protection principle. *See* Br. for Appellant at 62, 64 n. 10. We need not reach this issue, however, as appellant also raises a question as to the applicability of the "victim assessment" provision in this case. Section 3013 did not become effective until after appellant's arrest. The District Court was apparently unaware of this fact. The District Court also apparently believed that it had no discretion with respect to the imposition of a "victim assessment." *See* Transcript of Sentencing Hearing (Jan. 31, 1985) at 4 ("[A]s I understand that law I have absolutely no discretion in respect to that matter."). Even though the District Court might have imposed a fine in the same amount under an alternate statutory provision, 16 U.S.C. § 3 (1982), it is appropriate to remand this case to the District Court for the limited purpose of permitting it to entertain a motion to reduce or vacate the sentence. Fed.R.Crim.P. 35.

*Affirmed and Remanded for a Limited Purpose.*