[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 31, 2004**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 03-14265

_____

D. C. Docket No. 03-00062-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARRY L. BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 31, 2004)**

Before MARCUS and WILSON, Circuit Judges, and DUPLANTIER[*], District Judge.

MARCUS, Circuit Judge:

Barry L. Brown appeals his three misdemeanor convictions for violating

National Park Service traffic regulations within a national seashore.  These

_____

[*] Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of
Louisiana, sitting by designation.

convictions resulted in imposition of a one-year term of probation and a total of $775 in fines. On appeal, he argues that the regulations under which he was convicted are facially unconstitutional and violate the separation-of-powers principle, pursuant to the nondelegation doctrine, because the regulations were promulgated by the Secretary of the Interior ("Secretary") and not Congress.

We review questions of constitutional law de novo. See Nichols v. Hopper, 173 F.3d 820, 822 (11th Cir. 1999); Pleasant-El v. Oil Recovery Co., 148 F.3d 1300, 1301 (11th Cir. 1998); see also St. Francis Hosp. Ctr. v. Heckler, 714 F.2d 872, 873 (7th Cir. 1983) ("Deference to administrative expertise does not extend to judging the constitutionality of a statute or regulatory scheme."). A facial challenge to a legislative act "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987); see also Jacobs v. The Florida Bar, 50 F.3d 901, 906 n.20 (11th Cir. 1995) ("[W]hen a plaintiff attacks a law facially, the plaintiff bears the burden of proving that the law could never be constitutionally applied.").

Based on our plenary review of the record and careful consideration of the parties' briefs and oral presentations, we conclude that the challenged regulations are not facially unconstitutional and accordingly affirm.

The facts relevant to the purely legal issue raised in this appeal are undisputed and may be stated briefly. By information, Brown was charged with violating three misdemeanor National Park Service traffic regulations within a national seashore: (1) unlawfully operating a motor vehicle while under the influence of alcohol, to a degree that rendered him incapable of safe operation, in violation of 36 C.F.R. § 4.23[1] ("Count I"); (2) refusing to submit to a test of his

---

[1] Section 4.23, which prohibits the operation of a motor vehicle while under the influence of alcohol or drugs, provides the following, inter alia:

> (a) Operating or being in actual physical control of a motor vehicle is prohibited while:
>
> (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
> (2) The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.
>
> (b) The provisions of paragraph (a) of this section also apply to an operator who is or has been legally entitled to use alcohol or another drug.
>
> (c) Tests.
>
> (1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a

breath for the purpose of determining blood alcohol or drug content, in violation of 36 C.F.R. § 4.23(c) ("Count II"); and (3) speeding, in violation of 36 C.F.R. § 4.21[2] ("Count III").

---

provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.

36 C.F.R. § 4.23.

[2] Section 4.21, which establishes speed limits for vehicles in various parts of national parks, forests, and public property, provides the following, inter alia:

(a) Park area speed limits are as follows:

(1) 15 miles per hour: within all school zones, campgrounds, picnic areas, parking areas, utility areas, business or residential areas, other places of public assemblage and at emergency scenes.
(2) 25 miles per hour: upon sections of park road under repair or construction.
(3) 45 miles per hour: upon all other park roads.

(b) The superintendent may designate a different speed limit upon any park road when a speed limit set forth in paragraph (a) of this section is determined to be unreasonable, unsafe or inconsistent with the purposes for which the park area was established. Speed limits shall be posted by using standard traffic control devices.

(c) Operating a vehicle at a speed in excess of the speed limit is prohibited.

(d) An authorized person may utilize radiomicrowaves or other electrical devices to determine the speed of a vehicle on a park road. Signs indicating that vehicle speed is determined by the use of radiomicrowaves or other electrical devices are not required.

36 C.F.R. § 4.21.

At a bench trial before the magistrate judge, the government presented evidence that after Brown was stopped by a park ranger for driving 52 miles per hour in a 35-mile-per-hour zone within the Gulf Islands National Seashore,[3] the ranger determined, based on his observations during three field sobriety tests, that Brown was driving under the influence of alcohol. Brown refused the ranger's request to submit to a breathalyzer. The magistrate judge found Brown guilty of all three offenses and sentenced him pursuant to 36 C.F.R. § 1.3.[4] On Count I,

[3] Title 16 U.S.C., section 459h-4 provides that the Secretary shall administer Gulf Islands National Seashore in accordance with Sections 1 and 2 to 4 of Title 16 and "may utilize such statutory authorities available to him for the conservation and management of wildlife and natural resources as he deems appropriate."

[4] Section 1.3, which enumerates penalties for violating the Park System's traffic regulations, provides the following:

(a) A person convicted of violating a provision of the regulations contained in Parts 1 through 7, 12 and 13 of this chapter, within a park area not covered in paragraphs (b) or (c) of this section, shall be punished by a fine as provided by law, or by imprisonment not exceeding 6 months, or both, and shall be adjudged to pay all costs of the proceedings.

(b) A person who knowingly and willfully violates any provision of the regulations contained in parts 1 through 5, 7 and 12 of this chapter, within any national military park, battlefield site, national monument, or miscellaneous memorial transferred to the jurisdiction of the Secretary of the Interior from that of the Secretary of War by Executive Order No. 6166, June 10, 1933, and enumerated in Executive Order No. 6228, July 28, 1933, shall be punished by a fine as provided by law, or by imprisonment for not more than 3 months, or by both.

(c) A person convicted of violating any provision of the regulations contained in parts 1 through 7 of this chapter, within a park area established pursuant to the Act of August 21, 1935, 49 Stat. 666, shall be punished by a fine as provided by law and shall be adjudged to pay all costs of the proceedings. 16 U.S.C. 462.

(d) Notwithstanding the provisions of paragraphs (a), (b) and (c) of this section, a person

5

Brown was sentenced to a one-year term of probation, and, as to all counts, he was ordered to complete DUI school, perform 50 hours of community service work, and to pay a total of $775 in fines.

On appeal to the district court, Brown argued that the federal regulations he had been charged with violating were unconstitutional because they were promulgated pursuant to an improper delegation of legislative authority and in violation of the separation-of-powers doctrine. The district court affirmed Brown's convictions. This appeal followed.

In this Court, Brown again contends that the regulations are facially unconstitutional because they violate the nondelegation doctrine in that Congress has unlawfully delegated to the Secretary the power to define crimes and set punishments for those crimes, a power that is inherently legislative in nature. Brown's argument is twofold. First, he argues that, in delegating authority to the Secretary, Congress failed to provide sufficient guidance, or an "intelligible principle," for the exercise of the Secretary's discretion. Second, he asserts that Congress could not delegate to the Secretary the authority to enumerate, and set

convicted of violating § 2.23 of this chapter shall be punished by a fine as provided by law. 16 U.S.C. 460.

36 C.F.R. § 1.3.

punishments for, prohibited behavior within the Park System.  Because we find in this case that Congress, and not the Secretary, provided the punishment for violations of the Secretary's regulations, and because Congress set standards that are sufficiently specific to guide the Secretary when promulgating regulations which are "necessary and proper for the use, preservation, and management of the national parks, monuments and reservations of the United States," as required by 16 U.S.C. § 3, we reject both aspects of Brown's argument.

Article I, section 1 of the Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States . . . ."  U.S. Const. art. I, § 1.  In Mistretta v. United States, 488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989), the Supreme Court reiterated the long-established principle that "'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch."  Id. at 371-72, 109 S. Ct. at 654 (quoting Field v. Clark, 143 U.S. 649, 692, 12 S. Ct. 495, 504, 36 L. Ed. 294 (1892)); see also Loving v. United States, 517 U.S. 748, 758, 116 S. Ct. 1737, 1744, 135 L. Ed. 2d 36 (1996) ("The fundamental precept of the delegation doctrine is that the lawmaking function belongs to Congress, U.S. Const., Art. I, § 1, and may not be conveyed to another branch or entity.").

The nondelegation doctrine, however, does not prevent Congress from delegating to others "at least some authority that it could exercise itself." Loving, 517 U.S. at 758, 116 S. Ct. at 1744; see also Mistretta, 488 U.S. at 372, 109 S. Ct. at 654 (emphasizing that the Constitution does not prohibit Congress from obtaining assistance from coordinate branches). Thus, Congress may delegate authority to a coordinate branch when it lays "down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform. . . ." Mistretta, 488 U.S. at 372, 109 S. Ct. at 655 (alteration in original) (emphasis added) (citing J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S. Ct. 348, 352, 72 L. Ed. 624 (1928)).

Mistretta concerned the constitutionality of Congress's delegation of the power to promulgate the Federal Sentencing Guidelines to the Federal Sentencing Commission.[5] The Supreme Court summarized the "intelligible principle" test in these terms: a delegation of legislative power will be "constitutionally sufficient if

---

[5] In Mistretta, the Court upheld this delegation because Congress specified: (1) the goals for which the Commission must aim; (2) the final product of the delegation; (3) specific factors the Commission must consider; and (4) limits on the Commission's power. Id. at 372-76, 109 S. Ct. at 655-57. Other factors the Court has identified when determining whether delegation is proper are: (1) the availability of judicial review, see Carlson v. Landon, 342 U.S. 524, 542-44, 72 S. Ct. 525, 535-36, 96 L. Ed. 547 (1952); (2) the rapidity of changes in the matter being regulated, see Yakus v. United States, 321 U.S. 414, 432, 64 S. Ct. 660, 671, 88 L. Ed. 834 (1944); (3) the complexity of the field, see Mistretta, 488 U.S. at 372, 109 S. Ct. at 655; and (4) the existence of "well-known and generally acceptable standards" in the field being regulated, see Fahey v. Mallonee, 332 U.S. 245, 250, 67 S. Ct. 1552, 1554, 91 L. Ed. 2030 (1947).

Congress clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority." Id. at 372-73, 109 S. Ct. at 655 (internal quotation marks omitted). In Mistretta, the Court repeated the often- quoted observation of Chief Justice Taft, writing in J.W. Hampton: "In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the governmental co-ordination." 276 U.S. at 406, 48 S. Ct. at 351. "The government does not bear an onerous burden in demonstrating the existence of an intelligible principle." South Carolina Med. Ass'n v. Thompson, 327 F.3d 346, 350 (4th Cir.), cert. denied, 124 S. Ct. 464, 157 L. Ed. 2d 371 (2003).

Applying the "intelligible principle" test, the Supreme Court has given Congress wide latitude in delegating its powers. With the exception of two 1935 cases invalidating statutes as unconstitutional delegations of power, see Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S. Ct. 241, 79 L. Ed. 446 (1935), and A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S. Ct. 837, 79 L. Ed. 1570 (1935), the Court has upheld every challenge to a congressional delegation of power that has been presented to it. See Mistretta, 488 U.S. at 373, 109 S. Ct. at 655. "In the history of the Court we have found the requisite

9

'intelligible principle' lacking in only two statutes, one of which [Panama Refining] provided literally no guidance for the exercise of discretion, and the other of which [Schechter Poultry] conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 474, 121 S. Ct. 903, 913, 149 L. Ed. 2d 1 (2001).

Interpreting the nondelegation doctrine, we have held that Congressional legislation "which prescribes essential standards and basic legislative policy and delegates to an administrator authority for promulgation of rules and regulations is constitutionally permissible, provided the standards are 'sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the Administrator . . . has conformed to those standards.'" United States v. Sans, 731 F.2d 1521, 1527-28 (11th Cir. 1984) (quoting United States v. Womack, 654 F.2d 1034, 1037 (5th Cir. Unit B 1981)).[6]

In Brown's case, the first two prongs of the Mistretta test -- the general policy and the public agency that is to apply the delegated authority -- are essentially undisputed. First, Congress clearly specified a general policy and the

_____

[6] Decisions of the Fifth Circuit rendered on or before September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

goals for which the delegatee must aim when it created the National Park Service and instructed it, under the direction of the Department of the Interior, to

> promote and regulate the use of the Federal areas known as national parks, monuments, and reservations . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1; see also 16 U.S.C. § 461 ("It is declared that it is a national policy to preserve for public use historic sites, buildings, and objects of national significance for the inspiration and benefit of the people of the United States.").

We would be hard-pressed to find that the foregoing policy is too broad to pass constitutional muster under Mistretta's first prong. Cf. Nat'l Broad. Co. v. United States, 319 U.S. 190, 216-17, 63 S. Ct. 997, 1009-10, 87 L. Ed. 1344 (1943) (upholding delegation to Federal Communications Commission to make regulations "in the public interest"); Yakus, 321 U.S. at 422-23, 64 S. Ct. at 666-67 (upholding delegation to administrator to fix commodity prices that would be "fair and equitable"); New York Cent. Secs. Corp. v. United States, 287 U.S. 12, 24-25,  53 S. Ct. 45, 48, 77 L. Ed. 138 (1932) (upholding delegation to Interstate Commerce Commission to authorize mergers of railroad companies if it finds them "in the public interest"); see also Lichter v. United States, 334 U.S. 742, 778, 68 S.

Ct. 1294, 1313, 92 L. Ed. 1694 (1948) (upholding delegation under Renegotiation Act to determine whether private parties earned "excessive profits" during wartime).

Second, Congress unambiguously has designated the public agency which is to apply this policy:

> [t]he Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and any violation of any of the rules and regulations authorized by [this section and sections 1, 2 and 4 of this title] shall be punished by a fine of not more than $500 or imprisonment for not exceeding six months, or both, and be adjudged to pay all cost[s] of the proceedings.

16 U.S.C. § 3; see also 16 U.S.C. § 462(k) (providing that Secretary, "for the purpose of effectuating the policy expressed in [section 461 of this title]," has the power to "make such rules and regulations not inconsistent with [sections 461 to 467 of this title] as may be necessary and proper to carry out the provisions thereof. Any person violating any of the rules and regulations authorized by said sections shall be punished by a fine of not more than $500 and be adjudged to pay all cost[s] of the proceedings.").

It is to the third Mistretta prong -- Congress's delineation of the boundaries of the Secretary's delegated authority -- that the crux of Brown's argument is

12

directed in this appeal. The Secretary, through the National Park Service, is empowered to "promote and regulate" national parks, but must do so in a manner that "conform[s] to the fundamental purpose of the said parks." 16 U.S.C. § 1. Again, that congressionally-enumerated fundamental purpose is "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." Id. In order to promulgate a regulation, pursuant to 16 U.S.C. § 3's grant of authority, the Secretary is required to deem the regulation "necessary and proper for the use and management of the parks." 16 U.S.C. § 3.

Here, the Secretary did just that when he promulgated the traffic safety regulations, which are codified in Part 4 of Title 36 of the Code of Federal Regulations, and made them uniformly applicable to all national parks. When the Secretary passed these regulations, he noted that the National Park Service administers 337 park areas, which include some 8,000 miles of roads within the National Park System. See 52 Fed. Reg. at 10,670. "Although visitors to the National Park System use a variety of access methods, the vast majority continue to rely on motor vehicles and roadways to reach park areas and to circulate within them. Consequently, the NPS has major program responsibilities in the areas of

13

road construction and maintenance, traffic safety and traffic law enforcement." Id. Since motor vehicles are the preferred mode of transportation to access and tour the park system, and in light of traffic and safety concerns related to the regular use of cars in the parks, it is plain that the prohibition of both operating a motor vehicle while under the influence of alcohol and speeding in the national parks is altogether consistent with and promotes the relevant, clearly enumerated national policies.

While the NPS vehicle and traffic safety regulations generally adopt state motor vehicle codes as the law governing the operation of vehicles within the national parks, in promulgating the regulatory scheme, the Secretary explained that Servicewide traffic regulations were necessary: "NPS regulations supplementing [state motor vehicle] codes are limited to ones that are necessary to resolve visitor safety and/or resource protection concerns that cannot be satisfied on a Servicewide basis by applying and enforcing State vehicle code provisions." Id. at 10,678. Moreover, the Secretary determined that the roads in national parks are altogether different in character from roads in the surrounding areas, in which state vehicle code provisions control: the parks' roads are designed to blend into surroundings and enhance a visitor's enjoyment of the park while non-park roads are primarily designed to get travelers from one place to another. Id. at 10,670. In

14

short, the national policy Congress has pronounced in § 1 of Title 16 denotes the Secretary's objective in passing regulations -- to conserve scenery, historic objects, and wildlife in the national parks, and to provide for use of the parks in a manner that will not impair enjoyment for future generations. See 16 U.S.C. § 1. The standard set out in § 3, "necessary and proper for the use and management of the parks," defines the boundaries of the Secretary's regulation- and rule-making authority. See 16 U.S.C. § 3.

Moreover, while Brown likens his case to the only two cases in which the Supreme Court has found a violation of the nondelegation doctrine, those cases are readily distinguishable. Although both Panama Refining and Schechter Poultry involved delegations of authority to criminalize activity, in Panama Refining the delegating statute did not declare any policy regarding the transportation of excess petroleum production, did not qualify the President's delegated authority, and did not establish any criterion "to govern the President's course." 293 U.S. at 415, 55 S. Ct. at 246. And in Schechter Poultry, the delegating statute failed to establish any standards for the delegated legislative conduct, 295 U.S. at 541-42, 55 S. Ct. at 848.

By contrast, here, Congress has delineated both a general policy and the public agency which is to apply it. Moreover, Congress has provided the

15

Secretary with sufficient standards for the legislated authority by instructing the National Park Service, acting through the Secretary, to "promote and regulate" national parks "by such means and measures as to conform to the fundamental purpose of the said parks." 16 U.S.C. § 1. The fundamental purpose, again, is enumerated as follows: "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same . . . as will leave them unimpaired for the enjoyment of future generations." Id.

In sum, Congress has stated the legislative objective, has prescribed the method of achieving that objective, and has laid down standards to guide the Secretary's determination of the occasions for the exercise of his rule- and regulation-making authority. Accordingly, Mistretta's intelligible-principle standard is satisfied in this case.

We now turn to Brown's argument that because Congress has delegated the authority to define the contours of criminal conduct, it must satisfy a standard higher than the intelligible-principle standard. To the extent Brown suggests that Congress cannot delegate the power to define what conduct is criminal, we find his argument to be overstated. As the Supreme Court has plainly held, "[t]here is no absolute rule . . . against Congress' delegation of [the] authority to define criminal punishments." Loving, 517 U.S. at 768, 116 S.Ct. at 1748. Rather,

16

Congress may delegate the power to define by regulation what conduct is criminal "so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute.'" Id. (quoting United States v. Grimaud, 220 U.S. 506, 518, 31 S.Ct. 480, 483, 55 L. Ed. 563 (1911) and citing Touby v. United States, 500 U.S. 160, 111 S.Ct. 1752, 114 L. Ed. 2d 219 (1991)). Here, Brown challenges Regulations 4.21 and 4.23, alleging that only the legislature has the authority to criminalize conduct, and, that the Secretary, by setting forth prohibited behavior and providing the punishment, unlawfully "legislated." We disagree.

In support of his argument, Brown relies on statements in Mistretta and Fahey, that characterize the statutes at issue in Schechter Poultry and Panama Refining as delegating power to make "federal crimes of acts that never had been such before," Fahey, 332 U.S. at 249, 67 S. Ct. at 1554, and to create "new crimes in uncharted fields," see Mistretta, 488 U.S. at 373 n.7, 109 S. Ct at 655 n.7. However, the point of those statements was not that a higher constitutional standard applies to regulations with penal consequences, but rather that the delegations at issue in those cases were unconstitutional precisely because "Congress had failed to articulate any policy or standard that would serve to

17

confine the discretion of the authorities to whom Congress had delegated power."
Mistretta, 488 U.S. at 373 n.7 (emphasis added).

In Yakus, the Court upheld a delegation of authority to fix maximum commodity prices and rents even though violation of the regulations was a criminal offense:

> The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct--here the [Office of Price Administration's] rule, with penal sanctions, that prices shall not be greater than those fixed by maximum price regulations which conform to standards and will tend to further the policy which Congress has established."

321 U.S. at 424, 64 S. Ct. at 667(emphasis added). There was no suggestion in Yakus that a more stringent standard for delegation applied. Indeed, as the Court observed long ago in J.W. Hampton, Congress frequently finds it necessary, in order "to secure the exact effect intended by its acts of legislation," to delegate authority to and vest discretion in executive officers "to make regulations directing the details of its [the legislation's] execution, even to the extent of providing for penalizing a breach of such regulations." 276 U.S. at 406, 48 S. Ct. 351 (emphasis added); see also Samora v. United States, 406 F.2d 1095, 1098 (5th Cir. 1969) ("It long has been established that Congress may validly provide a criminal sanction

18

for the violation of rules or regulations which it has empowered the President or an administrative agency to enact.").

In the seminal nondelegation case, Grimaud, the Supreme Court upheld an administrative regulation made and promulgated by the Secretary of Agriculture under the authority conferred upon him by the Forest Reserve Acts. See Grimaud, 220 U.S. at 522-23, 31 S.Ct. at 485. Those Acts authorized the Secretary of Agriculture to "make such rules and regulations and establish such service as will insure the objects of such reservations; namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction," and provided that "any violation of the provisions of this act or such rules and regulations shall be punished" by a fine of not more than $500 and imprisonment for not more than twelve months, or both. Id. at 515, 31 S. Ct. at 482. Under the authority of these Acts, the Secretary of Agriculture promulgated regulations proscribing the grazing of stock upon a forest reservation without a permit. See id. at 514-15, 31 S. Ct. at 481.

The defendants in Grimaud were indicted for grazing stock on a forest reservation without the necessary permit from the Secretary of Agriculture and challenged the validity of the act of Congress making it an offense to violate a regulation promulgated by the Secretary of Agriculture, on the grounds that the

19

codification constituted an unconstitutional delegation of legislative power to an administrative agency.  See id. at 514, 31 S. Ct. at 482.  The Court upheld the validity of the delegation, stating:

> From the beginning of the Government, various acts have been passed conferring upon executive officers power to make rules and regulations -- not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress, or measured by the injury done.

Id. at 517, 31 S. Ct. at 483 (emphasis added).  Indeed, as the Court observed, to deny the legislature the ability to delegate its power to agencies to fill in the details of a legislative mandate would "stop the wheels of government."  Id. at 520, 31 S. Ct. at 484.  The Court thus ruled that violation of the stock-grazing regulation was made a crime not by the Secretary of Agriculture, but rather by those acts of Congress which provided that violations of such regulations would be criminally punishable.  Thus, the Court concluded, there was no unlawful delegation of legislative power. See id.

Similarly, here, it is not the Secretary but Congress that has prohibited violations of the Park Service regulations:

20

The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and <u>any violation of any of the rules and regulations authorized by this section and sections 1, 2 and 4 of this title shall be punished by a fine of not more than $500 or imprisonment for not exceeding six months, or both, and be adjudged to pay all cost[s] of the proceedings</u>.

16 U.S.C. § 3 (emphasis added); <u>see also</u> <u>United States v. Grace</u>, 778 F.2d 818, 822-23 (D.C. Cir. 1985) ("categorically" rejecting argument that National Park Service regulations, passed pursuant to 16 U.S.C. § 3, violated separation of powers; "[i]t is not the Park Service but the Congress that has criminalized violations of the Park Service regulations.").  Indeed, the Secretary's authority to define by regulation what conduct is criminal in the national parks and forests, pursuant to delegated authority, has been upheld in a variety of circumstances.  <u>See, e.g.</u>, <u>Grace</u>, 778 F.2d at 820-21 (upholding Secretary's promulgation of regulation permitting placement of presidential seal on reviewing stand for presidential inauguration on White House sidewalk, but prohibiting placement of stationary signs on same sidewalk); <u>see</u> <u>also</u> <u>United States v. Hymans</u>, 463 F.2d 615, 616 (10th Cir. 1972) (upholding Secretary of Agriculture's promulgation, pursuant to delegated authority, of regulations prohibiting indecent conduct in national forests); <u>McMichael v. United States</u>, 355 F.2d 283, 286 (9th Cir. 1965)

21

(upholding Department of Agriculture's regulations making it a misdemeanor to operate motorized vehicles in certain areas of national forests).

In sum, in Title 16, Congress delegated to the Secretary the authority to promulgate rules and regulations that were necessary and proper to effect Congress's stated goal of preserving and managing national parks. Protection of the parks, wildlife, and visitors by prohibiting unsafe and drunk driving does not exceed the legislative grant of authority conferred in 16 U.S.C. § 3. Congress set out the Secretary's powers and duties, announced intelligible principles, and created the penalties to be imposed for violations of the Secretary's rules and regulations. Accordingly, we can find no unconstitutional delegation in this case.

**AFFIRMED.**