[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16267
Non-Argument Calendar

_____

D. C. Docket No. 05-20235-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCOS GAMINO,
DENNIS GREENIDGE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(February 6, 2007)**

Before ANDERSON, DUBINA and CARNES. Circuit Judges.

PER CURIAM:

Marcos Gamino and Dennis Greenidge appeal their convictions for: (1)

conspiring to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) attempted possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1); (3) conspiring to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a); (4) attempting to obstruct, delay, or affect commerce by robbery, in violation of 18 U.S.C. § 1951(a); (5) conspiring to use, carry, and possess a firearm during and in the furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (n); and (6) carrying and possessing a firearm during and in the furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

First, Greenidge argues, for the first time on appeal, that the "reverse sting" employed by state and federal law enforcement agents violated his Fifth Amendment due process rights, as well as "basic constitutional guarantees of justice and fair play." He asks us to adopt a "corroboration rule" requiring independent corroboration of the elements of knowledge and intent as to the specific conspiracy and substantive offenses charged in cases such as his. Second, Gamino argues that the district court deprived him of his right to due process of law by first, with the prosecutor, improperly inducing an informant to assert his Fifth Amendment right against self incrimination, and then refusing to grant

2

immunity to that witness. With our permission, Greenidge has adopted this

argument on appeal.[1] Finally, Greenidge argues, first, that the evidence at trial was

insufficient to support his convictions, because the only evidence of his knowledge

and intent to commit the object offenses was his presence in the informant's

vehicle, the fact that he was wearing a bullet-proof vest, and a co-conspirator's

uncorroborated testimony. Further, Greenidge argues that even if this is sufficient

evidence under existing law, we should fashion a new rule of law requiring

extrinsic, corroborative evidence of a defendant's knowledge and intent in addition

to any cooperating codefendant's testimony.[2]

## I.

Because Greenidge did not raise his Fifth Amendment argument before the

district court, we review it only for plain error. Olano, 507 U.S. at 732, 113 S.Ct.

at 1776. Accordingly, Greenidge must show: (1) error, (2) that is plain, (3) that

affected his substantial rights, and (4) that seriously affected the fairness and

integrity of the proceedings. Id. "An error cannot meet the plain requirement of

---

[1] Greenidge did not join in Gamino's arguments on this issue before the district court. Accordingly, with regard to Greenidge, we will review this issue only for plain error. United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Nevertheless, as discussed infra, the standard of review is not dispositive, because even Gamino's preserved arguments on the issue are meritless.

[2] On appeal, Greenidge does not assert, as he did before the district court, that the government failed to prove that the cocaine moved in interstate commerce. Accordingly, that argument is waived. United States v. Jernigan, 341 F.3d 1273, 1284 n. 8 (11th Cir. 2003).

3

the plain error rule if it is not clear under current law." United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation marks omitted).

We have rejected challenges to reverse stings on numerous occasions. United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998). "While the Supreme Court and this Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court." Id.

Greenidge admits that he is asking us to depart from precedent and fashion a new rule. Accordingly, even assuming that Greenidge could show error, he has not shown that it is plain error, and we affirm his convictions under this indictment in this respect. See Chau, 426 F.3d at 1322 ("[a]n error cannot meet the 'plain' requirement of the plain error rule if it is not 'clear under current law'").

II.

To the extent that they were preserved, we review questions of constitutional law de novo. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004). "We review a district court's ruling on a defendant's invocation of his privilege against self-incrimination de novo." United States v. Hernandez, 141 F.3d 1042, 1049 (11th Cir. 1998).

4

"No person . . . shall be compelled in any [c]riminal [c]ase to be a witness against himself." U.S. Const. amend. V. "This provision . . . must be accorded liberal construction in favor of the right it was intended to secure." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). While this privilege covers testimony that would either directly "support a conviction under a federal criminal statute" or merely "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime," it only protects the witness where he or she "has reasonable cause to apprehend danger from a direct answer." Id. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. at 487, 71 S.Ct. at 818.

"[A] criminal defendant has a constitutional right to present his own witnesses to establish a defense." Unites States v. Terzado-Madruga, 897 F.2d 1099, 1108 (11th Cir. 1990) (quotation omitted). "Substantial interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant." Demps v. Wainwright, 805 F.2d 1426, 1433 (11th Cir. 1986). "When such a violation of due process rights occurs, a court must reverse the conviction without regard to prejudice to the defendant." Id. Notably, however, a

5

witness's right not to be compelled to incriminate himself trumps a defendant's right to subpoena witnesses in his defense. See United States v. Lacouture, 495 F.2d 1237, 1240 (5th Cir. 1974) (noting that even if the defendant had subpoenaed a witness, that witness's presence "[would] not override [her] privilege against compulsory self-incrimination").

The Supreme Court has reversed a defendant's conviction where the "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand." Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972). In that case, a state court judge sua sponte used very strong language with a witness, assuring him, for example, that if he lied under oath the judge would "personally see that [his] case [went] to the grand jury and [that he would] be indicted for perjury." Id. at 96, 93 S.Ct. at 352. The Court held that "in light of the great disparity between the posture of the presiding judge and that of a witness in these circumstances, the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." Id. at 98, 93 S.Ct. at 353 (emphasis added).

Unlike the court in Webb, other than assuring the informant that his decision regarding whether or not to assert his Fifth Amendment rights did matter, the

district court in this case did not make any remarks directed at him at all. Most of the debate regarding the assertion of his rights occurred before the informant was even present, and even after he was present the court neutrally informed him that it believed he needed counsel to advise him on his Fifth Amendment rights. Neither the court nor the government threatened the informant with the consequences of committing perjury. Ultimately, nothing the court or the government did could be said to have "exerted . . . duress" on the informant or come anywhere close to preluding a "free and voluntary choice whether or not to testify." Id. Further, an undercover law enforcement agent introduced, through testimony, the essential facts that Gamino intended to establish through the informant. On this basis, the court gave an entrapment instruction, and Gamino's counsel was able to assert an entrapment defense in his closing argument.

Before the district court, Gamino pointed to no support for his contention that the informant waived his Fifth Amendment rights. Even if there were error, which we doubt, it is not plain error. Gamino has not shown that his substantial rights were affected or that the fairness of the proceedings was seriously affected.

Additionally, because the government did not move to grant the informant use immunity, the court had no discretion to do so. 18 U.S.C. § 6003. Finally, because the court appointed counsel in a neutral way, showing only concern for the

7

informant's rights and without suggesting that the attorney should persuade him not to testify, and because there is no evidence that the attorney did anything other than enhance the informant's voluntary decision, Gamino's argument in this regard is meritless.

As to the propriety of the informant's assertion of his right not to incriminate himself, the extensive debate provided the court with a detailed understanding of what the informant was expected to address in his testimony, including information regarding an unrelated cocaine transaction. Because this could have reasonably caused the informant to "apprehend danger from a direct answer," the court properly found that he was legitimately exercising his right not to testify. Hoffman, 341 U.S. at 486, 71 S.Ct. at 818.

For all these reasons, the district court did not err by finding that the informant in this case had legitimately exercised his Fifth Amendment right and did not deprive Gamino of his right to due process of law in this regard.

III.

Because Greenidge did not ask the district court to apply a newly fashioned corroboration rule, we review that claim only for plain error. United States v. Dudley, 463 F.3d 1221, 1227 (11th Cir. 2006). Under this standard, Greenidge

8

must show: (1) error, (2) that is plain, (3) that affected his substantial rights, and (4) that seriously affected the fairness and integrity of the proceedings. Olano, 507 U.S. at 732, 113 S.Ct. at 1776.

When reviewing the sufficiency of the evidence, we must view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the government. United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001). As long as the jury "could find that the evidence establishe[d] guilt beyond a reasonable doubt," the evidence at trial did not need to "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Young, 906 F.2d 615, 618 (11th Cir. 1990). This is so because "[a] jury is free to choose among reasonable constructions of the evidence." United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983). Similarly, "we resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006).

"To support a conviction of conspiracy, the government must prove [1] that an agreement existed between two or more persons to commit a crime and [2] that the defendants knowingly and voluntarily joined or participated in the conspiracy." United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir.), cert. denied, 126 S.Ct.

772 (2005). The government is not required to demonstrate the existence of a "formal agreement," but may instead demonstrate by circumstantial evidence a meeting of the minds to commit an unlawful act. United States v. Arias-Izquierdo, 449 F.3d 1168, 1182 (11th Cir.), petition for cert. filed (U.S. Nov. 13, 2006) (No. 06-7829). Proof that the accused committed an act which furthered the purpose of the conspiracy is relevant to the existence of agreement, id., as is evidence that the defendant "knew the essential object of the conspiracy," Silvestri, 409 F.3d at 1328. "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005), cert. denied, 126 S.Ct. 1635 (2006).

"To sustain a conviction for attempted possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendants (1) acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of their criminal intent." United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). To prove attempted Hobbs Act

10

robbery, the government had to prove that the robbery would have affected commerce had it been completed. United States v. Kaplan, 171 F.3d 1351, 1354 (11th Cir. 1999).

"To sustain a conviction under § 924(c), the government must show that, during and in relation to their conspiracy to rob cocaine, defendants used, carried, or possessed a firearm in furtherance of that conspiracy." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir.), cert. denied, 543 U.S. 937 (2004). "Possession may be actual or constructive, joint or sole. . . . [a]nd . . . a defendant may be liable for a co-conspirator's possession if possession was reasonably foreseeable." Id.

As to the conspiracy counts, first, a co-conspirator testified expressly that Gamino and Greenidge had come to an agreement, and his description of Gamino's discussion recruiting Greenidge and their agreement to split the stolen cocaine showed that Gamino and Greenidge also had an agreement. Next, circumstantial evidence of Greenidge's knowledge and intent included: (1) the co-conspirator telling him they were going to rob cocaine; (2) Gamino speaking to him privately, possibly to discuss the planned crime; and (3) Greenidge's conduct in accompanying the others while carrying a weapon and wearing a bullet-proof vest. Accordingly, the jury could reasonably have concluded beyond a reasonable doubt that Greenidge had committed the conspiracy charges.

11

For these same reasons, the jury could have concluded beyond a reasonable doubt that Greenidge had acted with the culpability necessary to possess the cocaine, and that he had the intent to distribute it. Further, the jury could have concluded beyond a reasonable doubt that he took a substantial step toward completing the offense when he armed himself and rode in the vehicle to the warehouse. Finally, the jury could have concluded beyond a reasonable doubt that the robbery, if completed, would have effected commerce, as the undercover law enforcement agent testified that he told Gamino the cocaine had come from Colombia. Accordingly, the evidence was sufficient to support the attempt charges.

As to the substantive firearms charge, given the testimony by the co-conspirator and the law enforcement photographer, as well as the physical evidence admitted through the photographer, the jury could have concluded beyond a reasonable doubt that Greenidge had carried a firearm in relation to the conspiracy to rob the cocaine.[3] Further, the co-conspirator admitted that he had carried a firearm, which also could have served to support the charge against Greenidge, as this was reasonably foreseeable.

_____

[3] Although the photographer could not testify that the revolver was found in Greenidge's pocket, the jury could reasonably conclude, from the rest of his testimony and the photographs that he took at the scene, that it was found there.

For all these reasons, the evidence was sufficient to support Greenidge's conviction on all counts and none of his convictions were a manifest miscarriage of justice. We also reject Greenidge's argument that the district court should have applied a corroboration rule. We need not address the legal issue because we conclude that there was ample corroboration. Moreover, any error by the court was not plain and did not affect his substantial rights or the fairness of the proceeding. Chau, 426 F.3d at 1322. Accordingly, this argument also fails.

**AFFIRMED**[4]

---

[4] Appellants' request for oral argument is denied.