[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15774
Non-Argument Calendar

_____

D.C. Docket No. 1:05-cr-20586-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RIGAL BAPTISTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 9, 2015)

Before TJOFLAT, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

On July 3, 2005, Linda Nicolas arrived at the Miami International Airport on a flight from Haiti with a kilo of cocaine concealed in her lower abdomen over which she work a skin-tight pair of elastic biker shorts.  She aroused the suspicion of Customs officers and, on inspection, the cocaine was discovered.  On questioning by Special Agents of the U.S. Immigration and Customs Enforcement ("ICE"), Nicolas admitted that she was attempting to smuggle cocaine into the United States.  She said that she was to have been met at the airport by a man who would escort her and the smuggled cocaine to Bradenton, Florida.

Nicolas agreed to cooperate with the agents and gave them a description of the man she was to meet.  Under the agents' supervision, Nicolas led them to the location in the airport where the meeting was to take place, and they spotted a man make eye contact with her and make subtle gestures to summon her.  The agents seized the man, Rigal Baptiste, the appellant, and detained him.  Special Agents McBride and Morales interviewed Baptiste, and he admitted making arrangements for Nicolas to travel to Haiti to pick up a quantity of cocaine; he was to deliver the cocaine to a Mark Jerome in Bradenton.

Baptiste and Nicolas were arrested, and on July 15, 2005, jointly indicted on four counts for conspiracy to import cocaine,[1] conspiracy to distribute cocaine,[2]

---

[1]  21 U.S.C. § 963.

[2]  21 U.S.C. § 846.

and possession of cocaine with intent to distribute.[3]  Nicolas pled guilty to all counts on September 1, 2005.  Appellant, who had entered pleas of not guilty and been admitted to bail, absconded and became a fugitive.  He was arrested on May 24, 2013 and on September 24, 2013, stood trial before a jury.[4]  He was found guilty as charged and, on December 13, 2013, given concurrent prison sentences of 120 months.

Baptiste appeals his convictions, seeking a new trial on three grounds: the District Court (1) infringed the hearsay rule and his Confrontation Clause right by allowing Special Agents McBride and Morales to testify to Nicolas's description of Baptiste's involvement in the conspiracies to import and distribute the cocaine found on her person; (2) allowed the prosecutor to elicit inculpatory statements from the agents but excluded exculpatory statements; (3) allowed the Government to shift the burden of proof via the rebuttal portion of the prosecutor's closing argument to the jury at the close of the evidence.  We affirm.

## I.

A trial court ruling on the admissibility of evidence is reviewed for abuse of discretion.  *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997).  Whether a

---

[3]  21 U.S.C. § 841(a)(1).

[4]  Baptiste was tried on a superseding information which replicated the four counts of the initial indictment but omitted Nicolas as a codefendant.  Baptiste was charged in a separate indictment with failing to appear and pled guilty to the offense.

3

ruling denies a constitutional right is reviewed *de novo*. *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial . . ., offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). An out-of-court statement offered for a reason other than its truth is not hearsay. *Id.* An out-of-court statement may be admitted to explain why an officer conducted a particular investigation if "the probative value of the [statement's] non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement." *United States v. Baker*, 432 F.3d 1189, 1209 n.17 (11th Cir. 2005); *see also United States v. Jiminez*, 564 F.3d 1280, 1287–88 (11th Cir. 2009) (allowing an out-of-court statement to explain an officer's conduct).

The Sixth Amendment protects a criminal defendant's right to confront the witnesses against him. U.S. Const. amend VI. The Supreme Court explained in *Crawford v. Washington* that the Sixth Amendment prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L. Ed.2d 177 (2004). However, the Confrontation Clause "prohibits only statements that constitute impermissible hearsay," and does not bar "the use of testimonial statements for purposes other than establishing the

truth of the matter asserted." *Jiminez*, 564 F.3d at 1286–87 (quoting *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369).

We find no hearsay or Confrontation Clause violation here.  The agents did not testify as to the actual statements that Nicolas provided, but, rather, testified that she made a statement describing her coconspirator and that, as a result, they were able to identify Baptiste and verify that he was involved in the cocaine smuggling operation.  To the extent the contents of her statements were revealed or necessarily implied, they were not hearsay because they were not admitted for the truth of the matter asserted, but rather to explain the basis for the agents' investigatory actions in identifying and locating Baptiste, approaching him, and bringing him to a secure area for questioning.  *Jiminez*, 564 F.3d at 1287–88.  Any prejudicial effect of this ruling was mitigated by Baptiste's admission that he organized the smuggling venture and the circumstantial evidence corroborating the admission.  This same analysis applies to Baptiste's Confrontation Clause argument, which likewise fails.

## II.

Baptiste's defense was that he had been "set up" by Nicolas, with whom he had been romantically involved.  Since Nicolas did not testify as a prosecution witness and Baptiste did not take the stand or present any evidence in his own

defense, Baptiste attempted to establish this defense through his cross-examination

of Special Agents McBride and Morales.

> [Defense Counsel]: Do you remember talking to Rigel Baptiste about whether there had been a sexual relationship with Linda Nicolas?
>
> [McBride]: I don't remember asking him. But it was -- it would not have been an unusual question for me to ask him.
>
> [Defense Counsel]: You don't remember -- do you remember what he said about that? Did he deny it at that time?
>
> [McBride]: I -- honestly, I don't remember off the -- from memory. No, sir. I don't remember.

Doc. 134, at 91.

After counsel asked McBride whether he remembered Baptiste saying, "is it

a crime to pick up my girlfriend at the airport on a flight coming in?" the

prosecutor objected: "First of all, it's hearsay. Secondly, it's [been] asked and

answered." The court sustained the objection. *Id.* at 91–91.

Defense counsel asked similar questions of Special Agent Morales, but all

he could recall was that Baptiste stated that he had driven Nicolas to the airport and

was going to pick her up after she returned from Haiti. When counsel asked, "Did

he admit that he was kind of really hot in her [sic] in a sexual relationship?" the

prosecutor objected on hearsay grounds and the court sustained it. Doc. 135, at 81.

We find no abuse of discretion in the court's rulings. First, both witnesses

said they had no recollection of the statements Baptiste's purportedly made, as

reflected in counsel's questions, and that should have ended the inquiry. Second, Baptiste's argument—advanced for the first time in his brief to this court—that, for sake of completeness, the statements Baptiste purportedly made, as indicated in counsel's questions, should have come in through Federal Rule of Evidence 106, is meritless. Rule 106 states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

McBride and Morales were testifying from their reports of the investigation and their interview of Baptiste. The reports contained no indication that Baptiste uttered the sexual relationship statements suggested in the questions counsel posed. In short, there is nothing in the record indicating that further questioning along the lines counsel was pursuing would have "in fairness" rendered the agents' testimony complete.

### III.

Baptiste argues that the District Court, in overruling his objection to the prosecutor's rebuttal argument, in which he referred to the defense's failure to call an expert witness on interrogation, allowed "the prosecution to distort important facts and shift the burden of proof." Appellant's Br., at 28. This reference was in response to defense counsel's own argument in closing that the Government should have called an interrogation expert to testify in its case in chief. The court's charge

7

to the jury, which was delivered following closing argument, plainly informed the jury that the Government had the burden of proving all the elements of the crimes with which Baptiste had been charged.  There is no reasonable probability that but for the prosecutor's reference to the defense's failure to call an interrogation expert, the outcome of the trial would have been different.

AFFIRMED.